Marcelle Gale Barnum *vs.* Elizabeth B. Fay & others.

Suffolk.    November 8, 1945. — September 13, 1946.

Present: Field, C.J., Lummus, Dolan, Ronan, & Spalding, JJ.

*Fiduciary. Attorney at Law. Trust,* Express trust: validity; Rescission.
*Fraud. Undue Influence.*

A voluntary settlor, who has not reserved to himself alone the power of
revocation of a trust indenture executed by him, cannot have it set
aside where there was no mental incapacity or mistake on his part or
fraud or undue influence which induced its execution.

The mere fact, that an attorney at law permitted a client, without the
benefit of independent advice, to execute and deliver to him an instru-
ment appointing him trustee of a substantial amount of the client's
property with broad discretionary powers and not containing a power
of revocation, did not require rescission of the instrument in a suit in
equity by the settlor where it appeared, from findings of the trial
judge, not plainly wrong on reported oral testimony, that the attorney
had sustained the burden upon him in such circumstances of proving
that any influence over the client which might be presumed to have
arisen out of the relationship of attorney and client had been neutral-
ized by other means than independent advice so that there had been
no over-reaching of the client and no abuse of confidence.

The fact that the trustee in an inter vivos trust received fees as a director
of corporations of which he was a stockholder in his capacity as trus-
tee, although originally one of the relevant facts in a suit in equity by
the settlor to rescind the trust instrument on the ground that its
execution had been induced by breach of an attorney and client re-
lationship existing between the trustee and the settlor, became imma-
terial in that suit upon a finding, not plainly wrong on all the evidence,
that the execution of the trust instrument had not been so induced;
the propriety of the trustee's receipt of the fees was left a matter to
be determined in his accounting.

BILL IN EQUITY, filed in the Superior Court on September
6, 1944.

The suit was heard by *Beaudreau,* J.

*E. S. Farmer,* (*R. Rambach* with him,) for the plaintiff.

*M. A. Shattuck,* for the defendant Brink.

*J. N. Welch,* for the defendants Fay, submitted a brief.

Ronan, J.    The plaintiff seeks to set aside an instrument
dated December 9, 1941, and amended October 16, 1942,

purporting to transfer in trust to the defendant Brink certain property given to her under the will of her grandfather John A. Gale, alleging that she was induced to execute the indenture and amendment through the fraud and undue influence of her sister, the defendant Elizabeth B. Fay, and of her sister's husband, the defendant C. Norman Fay, and further alleging that the defendant Brink assisted them in procuring the execution of said instruments. The three remaining defendants are the minor children of the defendants Fay and are represented by a guardian ad litem. The plaintiff appealed from a final decree dismissing the bill. The judge made a report of the material facts and we have a transcript of all the evidence.

Many of the material facts furnishing the background of this controversy are not in dispute. The plaintiff was the granddaughter of John A. Gale who by the third clause of his will left her the income for life of a trust fund of $20,000, by the fourth clause left his other granddaughter, Elizabeth B. Fay, a similar interest in a trust fund of $25,000, and by the tenth clause of his will established a trust which upon the death of their mother, Jessie M. Barnum, later Mowat, was to be terminated, whereupon the property was to be equally divided between these two granddaughters. The assets of this trust amounted to $249,000 on February 9, 1942, about the time that Mr. Brink became the trustee. After the death of Mrs. Mowat, which occurred on March 4, 1944, the plaintiff demanded that Mr. Brink transfer to her half of the property in this trust. He refused to do so on the ground that it was held by him as trustee under the indenture of trust.

The plaintiff was born in 1900. Her first marriage in 1923 had terminated in a divorce in 1925 and she returned to her mother's home where she lived until her mother married Mowat in 1926. The plaintiff thereafter lived alone in Boston for a time and later in New York where she worked in a department store and as a social worker. She returned to Boston in 1933 and married one Olmsted in 1934 but they lived together for two months or less. She continued to live in Boston depending for her mainte-

nance in part upon the income from the trust established by the third clause of her grandfather's will and to a large extent upon financial aid given by her mother. The death of Mowat on October 22, 1941, if it did not lead to, was at least followed by a series of events. Mrs. Mowat declined to act as executor of her husband's estate and Mr. Brink was appointed administrator with the will annexed. The accounts of the trust company as trustee under the Gale will were assented to and upon their allowance and resignation of the trust company Mr. Brink became trustee. Mrs. Mowat executed a will on December 9, 1941, in which Mr. Brink was named executor. On the same day the plaintiff consulted Mr. Brink with reference to securing a divorce from Olmsted, which she obtained in June, 1942. She also executed the indenture of trust which, among other things, authorized Mr. Brink to make such payments of income and principal to her as he might deem necessary for her comfortable support, and upon her death to make similar payments to her sister Elizabeth, and, on and after the latter's death, to her children who upon becoming twenty-one years of age were to take a share in the trust property. The trustee was given broad powers to determine income and principal, the amounts to be paid to the plaintiff, and the securities in which the trust funds might be invested. He was to be held liable only for actual fraud. In case of vacancy a successor trustee was to be appointed by a writing signed by a majority of the senior partners of the law firm with which Mr. Brink was associated. The last clause of the trust indenture, which appeared directly over the plaintiff's signature, provided that the trust indenture might be amended or revoked with the written consent of the trustee. After making various subsidiary findings narrating the events which immediately preceded the execution of the trust indenture, the judge found upon all the evidence that Mr. Brink discharged his fiduciary relationship with the plaintiff in an honorable manner; that his refusal to consent to the termination of the trust was actuated both by her mother's and his desire to protect her; that the trust indenture was drawn at her request;

that it was "read, explained and understood by her" and that she executed it voluntarily without fraud, deceit or coercion upon her by any of the defendants; that the amendment to the trust indenture was drafted for the purpose of avoiding taxes; and that the plaintiff, after it had been "read, explained and understood by her," voluntarily signed it.

These findings, if justified by the evidence, bring the case within the principle that a voluntary settlor, in the absence of mental incapacity, fraud, undue influence or mistake, cannot set aside an indenture of trust in which he has not reserved to himself alone the power of revocation. *Taylor* v. *Buttrick*, 165 Mass. 547. *Sands* v. *Old Colony Trust Co.* 195 Mass. 575. *Coolidge* v. *Loring*, 235 Mass. 220. *Clune* v. *Norton*, 306 Mass. 324, 326.

The plaintiff while recognizing this general principle contends that it is not applicable because the findings of the judge are plainly wrong. Findings made by a judge on oral testimony given at a trial of a suit in equity are not to be reversed unless shown to be plainly wrong. *Trade Mutual Liability Ins. Co.* v. *Peters*, 291 Mass. 79, 84. *Lowell Bar Association* v. *Loeb*, 315 Mass. 176, 178. *Jurewicz* v. *Jurewicz*, 317 Mass. 512, 513. *Rayner* v. *McCabe*, 319 Mass. 311. The reason for this rule is that a judge who has seen and heard the witnesses is in a much better position to determine their credibility than we are from a printed record. *Berman* v. *Coakley*, 257 Mass. 159, 162. *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, 407–408. *Boston* v. *Santosuosso*, 307 Mass. 302, 331–332. *New England Trust Co.* v. *Commissioner of Corporations & Taxation*, 315 Mass. 639, 643.

The plaintiff attacks the finding that Mr. Brink discharged his fiduciary relationship in an honorable manner. She contends that it was an improvident act for her to execute an indenture of trust of the nature of the present one; that she had no independent legal advice with reference to the desirability of creating the trust; that Mr. Brink as trustee acquired a secret profit by the way of directors' fees from two banks, stock in which was included in the assets of

the trust; and that consequently this finding should be set aside. Whether it was improvident for her to execute an indenture of trust of this character was a factor to be considered in determining whether she signed the indenture voluntarily with full knowledge of its contents. There was no direct evidence that the plaintiff had received any independent advice. Doubtless a fiduciary relationship existed between the plaintiff and Mr. Brink. He was bound to act in good faith and solely for her best interests. There was no place in that relationship for any divided allegiance. Any transaction between an attorney and his client when called in question must be subjected to careful scrutiny and the burden is upon the attorney to prove that any influence over the client which might be presumed to have arisen out of the relationship was neutralized by independent advice given to the client or by some other means so that there was no overreaching of the client and no abuse of confidence. Whether that burden has been sustained depends upon the facts in each particular case. There is no rule of law that unless such independent advice is shown every transaction between an attorney and client must be set aside, although there are instances where the circumstances are such that in the absence of such evidence an attorney is unable to show that the transaction was fairly and honestly conducted. *Hill* v. *Hall*, 191 Mass. 253. *Tarr* v. *Vivian*, 272 Mass. 150. *Webster* v. *Kelly*, 274 Mass. 564. *Israel* v. *Sommer*, 292 Mass. 113. There is not the slightest evidence of any misrepresentation or concealment of facts. The indenture was read and explained by her attorney in the presence of her mother, who was friendly to her, had discussed with her the advisability of making a trust, and had suggested to Mr. Brink certain provisions which were incorporated in the indenture and also suggested to him that he submit it to the plaintiff for her examination and approval. Furthermore, the judge accepted as true the testimony of Mr. Brink. The finding in effect that Mr. Brink took no advantage of his fiduciary relationship with the plaintiff cannot be disturbed. *Manheim* v. *Woods*, 213 Mass. 537. *Dunne* v. *Cunningham*, 234 Mass. 332. *Mitchell* v. *Wright*, 234 Mass. 458. *Far-*

*quhar* v. *O'Connell*, 264 Mass. 53. *Wellman* v. *Carter*, 286 Mass. 237. *Slater* v. *Munroe*, 316 Mass. 129. Scott, Trusts, § 333.3.

. Among the assets of the trust were shares of stock of two Somerville banks. Mr. Brink became a director in each of these banks and received the compensation paid to directors. The plaintiff contends that this was a secret profit received by him. It will be time to decide that question when it is presented on the allowance of the account of the trustee. The receipt of these directors' fees,[1] like the nature of the trust,[2] the refusal of Mr. Brink to consent to the revocation of the trust[3] and all other conduct of the parties subsequent to the execution of the indenture of trust, was competent in so far as it shed any light upon the issue as to whether the execution of the indenture of trust was induced by fraud, undue influence or breach of a fiduciary relationship, and if, as the judge properly found, there was no such inducement, it became immaterial in the present proceeding, which sought a rescission of the trust and not a remedy for any alleged breach of the administration of the trust. See *Twomey* v. *Crowley*, 137 Mass. 184; *Shirk* v. *Walker*, 298 Mass. 251; *Hendrick* v. *Mitchell*, *ante*, 155, 158.

The finding with reference to the amendment of October 16, 1942, is not lacking evidential support and cannot be disturbed. The plaintiff was informed by the defendant Brink as to the nature of the amendment and the necessity for its execution a day or two before she came to his office to execute it. She did not wish to wait to see him when she arrived at the office but told his secretary that she understood the instrument and signed it. It is true that there was no direct evidence that she read the paper or that it was read to her but there was evidence that she knew and understood its contents and voluntarily signed it. Under such circumstances, she cannot avoid the effect of the instrument. *Taylor* v. *Buttrick*, 165 Mass. 547, 550. *Wheaton Building & Lumber Co.* v. *Boston*, 204 Mass. 218, 226. *Reggio* v. *Warren*,

---

[1] *Jose* v. *Lyman*, 316 Mass. 271, 279.

[2] *New England Trust Co.* v. *Paine*, 317 Mass. 542, 550.

[3] *Damon* v. *Damon*, 312 Mass. 268, 271, 272.

207 Mass. 525. *Coolidge* v. *Loring*, 235 Mass. 220. *Gold* v. *Boston Elevated Railway*, 244 Mass. 144. *Benjamin Foster Co.* v. *Commonwealth*, 318 Mass. 190, 196.

A careful examination has been made of all the evidence with reference to each of the other findings attacked by the plaintiff. A narration of the evidence in support of each of those findings together with a summary of the evidence in those instances where it points in a direction opposite to the finding would serve no useful purpose. It is enough to say that none of the findings lacks support in the evidence and none of them appears to be plainly wrong.

We need not decide whether the conclusion at which we have arrived could not also be reached on the ground that the conduct of the plaintiff and her dealings with Mr. Brink subsequent to the time that she contended she first became apprized of the contents of the trust indenture show that she ratified the execution of the indenture. *Pope* v. *Farnsworth*, 146 Mass. 339. *Preble* v. *Greenleaf*, 180 Mass. 79. *McInnes* v. *Whitman*, 313 Mass. 19, 27. *Lipsitt* v. *Sweeney*, 317 Mass. 706, 713.

*Decree affirmed.*