New England Merchants National Bank of Boston, trustee, *vs.* J. Harold Mahoney & others.

Suffolk. December 3, 1969. — February 2, 1970.

Present: Spalding, Cutter, Kirk, Spiegel, & Quirico, JJ.

*Trust*, Situs. *Conflict of Laws. Undue Influence. Evidence*, Presumptions and burden of proof.

Where it appeared that, although the settlors of an inter vivos trust were domiciled in another State at the time of the creation of the trust and at the times of their deaths, the trust instrument was executed in Massachusetts and the trust property was then delivered to the trustee here, and that the trustee was a Massachusetts corporation, and it did not appear that the trust property ever left Massachusetts, it was held that the settlors intended to have the trust administered here and that the validity of an exercise of a power of appointment reserved to one of the settlors must be determined by the law of Massachusetts. [656–657]

One attacking the validity of an exercise of a power of appointment reserved in an inter vivos trust to one of the settlors had the burden of proving invalidity. [657]

The record in a Probate Court proceeding involving the validity of an exercise of a power of appointment reserved in an inter vivos trust to one of the settlors did not show that undue influence with respect to the exercise had been exerted by the settlor's counsel and friend or by a nurse attending the settlor during his terminal illness or by a clergyman and friend who received a nonpersonal gift by the appointment, or that either the attorney or the clergyman abused his confidential relationship with the settlor. [657–658]

Petition filed in the Probate Court for the county of Suffolk on October 19, 1967.

The case was heard by *Mahoney*, J.

*J. Lindsay Ware (Charles F. Haywood* with him) for J. Harold Mahoney.

*John J. Gartland* for James N. Enright & others.

Spiegel, J. The petitioner seeks instructions regarding the distribution of principal which it holds as successor trustee under Article 6 of the trust indenture (trust) of

Bertha K. T. Mahoney and Dr. J. Lewis Mahoney, both of whom died domiciled in St. Petersburg, Florida. The probate judge entered a final decree ordering the funds distributed as follows: "$20,000 of the trust property to the Right Reverend Monsignor John J. Mullens, superintendent of St. Paul's Catholic School in St. Petersburg, Florida"; one-half of the "rest, residue and remainder of . . . [the] trust property" after fees and expenses to the Right Reverend Monsignor James F. Enright; one-eighth portions of said remainder to the Missouri Province Educational Institute of St. Louis, The Catholic Extension Society of the United States of America, The Pontifical Society for the Propagation of the Faith, and The Passionist Missions, Inc. This is an appeal by J. Harold Mahoney, a nephew of Dr. Mahoney. The trial judge made a "Report of Material Facts" and the evidence is reported.

Article 5 of the Mahoney Trust stated that after the death of the surviving settlor the trust property not previously disposed of should be divided "into two equal shares . . . Dr. Mahoney's half and Mrs. Mahoney's half." Article 6 provided: "As to Dr. Mahoney's half *the Trustee shall distribute the same to such persons and charitable institutions in such shares and amounts as Dr. Mahoney shall appoint by a written direction, signed and acknowledged by Dr. Mahoney, and delivered to the Trustee during the lifetime of Dr. Mahoney.* In default of and subject to such appointment, Dr. Mahoney's half shall be distributed as follows: one-half shall be distributed to Mr. Francis Hartnett, a nephew of Dr. Mahoney . . . ; the remaining half shall be distributed to Mr. J. Harold Mahoney, a nephew of Dr. Mahoney, now residing in Parrsboro, Cumberland County, Nova Scotia; if said J. Harold Mahoney is not living at the death of the survivor of Bertha K. T. Mahoney and J. Lewis Mahoney, said half shall be distributed in equal shares to those of the children of said J. Harold Mahoney who are alive at that time; if neither said J. Harold Mahoney nor any of his children are living at said time, said half shall be distributed in equal shares to Boston University, Boston,

Massachusetts, for use in the Medical School, and to Boston College, Newton, Massachusetts" (emphasis supplied).

We summarize pertinent portions of the judge's finding. "On March 20, 1941 a Living Trust was created by Dr. J. Lewis Mahoney and Bertha K. T. Mahoney, the Day Trust Company being named as the Trustee of such Indenture." New England Merchants National Bank of Boston is the present trustee since it absorbed the Day Trust. The present litigation involves only Dr. Mahoney's share of the trust. On August 14, 1944, November 22, 1944 and December 15, 1944, "Dr. Mahoney made distributee substitutions of his share . . . in accordance with the provisions of the Trust." Dr. Mahoney died on January 2, 1945. The power of appointment exercised by Dr. Mahoney on November 22, 1944, "in accordance with Article VI, by a written directive acknowledged by him," revoked the appointment executed on August 14, 1944. "On December 15, 1944 Dr. Mahoney amended the Appointment made November 22, 1944." Mrs. Mahoney died June 6, 1967. Francis Hartnett "pre-deceased both Dr. & Mrs. J. Lewis Mahoney."

J. Harold Mahoney does not claim that the trust is invalid but contends that the power of appointment exercised by Dr. Mahoney under the trust is invalid for reasons which we will discuss later in this opinion.

Initially, we must decide whether the law of Massachusetts or the law of Florida is to govern. "An inter vivos trust . . . is generally held to be valid if valid in the place of administration fixed by the settlor. If the trust is valid under that law, so also . . . an appointment . . . made by the exercise of a power of appointment contained in the trust" will be valid. Scott, Trusts (3d ed.) § 635, at p. 4034.

Dr. Mahoney was domiciled in Florida when the trust was created and died a domiciliary of that State. The trust instrument, however, was held in Massachusetts by a Massachusetts corporate trustee; it was duly executed in

Massachusetts and the property composing the trust was delivered to the trustee in Massachusetts at the time of the creation of the trust. There is nothing in the record indicating that the trust res ever left Massachusetts. In these circumstances, there is reason to believe that Dr. Mahoney intended the trust to be administered in Massachusetts. Scott, Trusts (3d ed.) § 612, at pp. 3952–3953. *Amerige* v. *Attorney Gen.* 324 Mass. 648, 659. *Boston Safe Deposit & Trust Co.* v. *Alfred Univ.* 339 Mass. 82, 85. We are, therefore, of opinion that the validity of the exercise of the power of appointment must be determined by Massachusetts law. Scott, Trusts (3d ed.) § 635, at p. 4034. *Greenough* v. *Osgood,* 235 Mass. 235, 241–242. See *Isaacson* v. *Boston Safe Deposit & Trust Co.* 325 Mass. 469, 472.

J. Harold Mahoney contends that the power of appointment exercised by Dr. Mahoney was invalid because it was obtained through undue influence. He also argues that there were "no 'facts' to show that the claim of undue influence was unfounded" and that the judge "has made for his decree a conclusion of law entirely unsupported by any evidence or finding." We do not agree. It is well established that "'The . . . [contestant has] the burden of proving undue influence.' *Viens* v. *Viens,* 302 Mass. 366, 367. *Tarricone* v. *Cummings,* 340 Mass. 758, 762. 'The guiding principles as to the factors to be considered in cases of fraud or undue influence have been set forth by Chief Justice Rugg in the leading case of *Neill* v. *Brackett,* 234 Mass. 367, and need not be restated.' *Abbott* v. *Noel,* 337 Mass. 133, 139." *O'Brien* v. *Wellesley College,* 346 Mass. 162, 171. J. Harold Mahoney has not pointed to any specific instances of undue influence.

The record reveals no evidence that any of the beneficiaries of the power exercised by Dr. Mahoney on November 22, 1944, influenced his execution of that power. The testimony of one Caroline Conway, Dr. Mahoney's nurse during his terminal illness, points to the conclusion that undue influence was not exerted on Dr. Mahoney. In response to the question, "Did Dr. Mahoney ever state to you that

anyone had ever influenced or attempted to influence [him] to change the trust or the provisions for the disposition of this trust?" she replied, "No . . . . No one ever influenced Dr. Mahoney. He had a very strong, good mind of his own . . . and, during the whole year I took care of him, I never saw anybody influence him for anything." Moreover, neither Mr. Arthur J. Nelson, Dr. Mahoney's attorney and personal friend, nor Caroline Conway, received any benefit from the exercise of the power.

That Mr. Nelson and Caroline Conway were in a position wherein it may have been possible to influence Dr. Mahoney's decisions is "not enough to warrant a finding of undue influence. There must be a solid foundation of established facts upon which to rest an inference of its existence." *Neill* v. *Brackett*, 234 Mass. 367, 370.

J. Harold Mahoney additionally contends that the fiduciary relationship between Mr. Nelson and Dr. Mahoney has been abused. We see no basis for such a conclusion. Even though Mr. Nelson did not advise Dr. Mahoney to seek independent advice regarding the disposition of the trust, there is no evidence that the transaction was not honestly conducted. *Barnum* v. *Fay*, 320 Mass. 177, 181. As previously stated, Mr. Nelson received no benefit from the exercise of the power, and the evidence shows that the instrument was drawn according to Dr. Mahoney's direction and specifications, and with his complete approval. There is no solid foundation of established facts upon which to rest an inference of misrepresentation or concealment of facts. *Barnum* v. *Fay, supra.*

J. Harold Mahoney's contention that Right Reverend Monsignor Enright exerted undue influence on and abused his confidential relationship with Dr. Mahoney does not require an extensive discussion. No evidence was introduced concerning the relationship, other than that the men were friends, and that Dr. Mahoney was one of Monsignor Enright's parishioners. In addition, we note that the appointments to Monsignor Enright were not personal gifts.

The evidence was sufficient to permit the judge to conclude, in effect, that the exercise of the power by Dr. Mahoney was free from undue influence.

*Decree affirmed.*

*Costs and expenses of this appeal to be awarded in the discretion of the Probate Court.*