OLIVIA W. ROSS *vs.* MARGARET D. NOURSE.

Suffolk.   October 7, 8, 1953. — December 15, 1953.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Evidence*, Of alienation of affections, Relevancy and materiality, Cumula-
tive.   *Practice, Civil*, Exceptions: whether error harmful;   Charge to
jury.   *Error*, Whether error harmful.

At the trial of an action for alienation of the affections of the plaintiff's
husband, a letter to her written by him while on active military service
before he finally deserted her was properly admitted as evidence of
the state of his affection for her.   [669]
In an action against a woman for alienation of the affections of the plain-
tiff's husband, letters written by the defendant to him at a time when
he and the defendant contemplated living together and containing
information as to a substantial legacy received by her and references
to sale or possible sale of property of substantial value were rightly
admitted as evidence of enticement by her where the jury were in-
structed that they could consider the letters on that issue only.   [669–
670]
An exception to the exclusion of a question asked in direct examination
of a witness must be overruled in the absence of an offer of proof as
to what facts an answer to the question would disclose.   [670]
At the trial of an action for alienation of the affections of the plaintiff's
husband, error harmful to the defendant was not shown in the ex-
clusion of the first paragraph of a letter, which the plaintiff authorized
her attorney to write to her husband prior to the commencement of
the action, stating the attorney's understanding that the husband had
not furnished support to the plaintiff and was not in a position to do
so, where such paragraph was followed by paragraphs admitted in
evidence stating that in the circumstances the attorney had advised
the plaintiff to bring an action against the defendant in order to secure
adequate support and that she had directed the bringing of an action
unless suitable arrangements for support were made.   [670–671]
The exclusion of admissible evidence which was merely cumulative and
would not have had any important effect on the result of the case
was harmless error.   [672]

Ross *v.* Nourse.

At the trial of an action against a woman for alienation of the affections of the plaintiff's husband, an exception to the judge's "singling out [in his charge] the reading of letters to show" knowledge of the defendant that the husband and the plaintiff were married was overruled where, although such knowledge was undisputed, it was not agreed upon by counsel and the charge disclosed no prejudicial emphasis on that point. [672]

TORT. Writ in the Superior Court dated October 13, 1948.

The action was tried before *Rome,* J.

*Leland Powers,* for the defendant.

*Calvin P. Bartlett,* (*Richard H. Lovell* with him,) for the plaintiff.

WILLIAMS, J. This is an action of tort by a married woman for alienation of her husband's affection. The plaintiff had a verdict and the case is here on the defendant's exceptions to the admission and exclusion of evidence and to a portion of the judge's charge. It is conceded by the defendant that apart from evidence admitted over her objections and exceptions there was evidence to warrant the submission of the case to the jury.

There was evidence that the plaintiff and her husband, Henry L. Ross, were married in New Haven, Connecticut, on February 11, 1928, and continued to live there and in Syracuse, New York, until 1937 when they moved to Wayland, Massachusetts. Two children were born of the marriage. The plaintiff and her husband met the defendant and her husband, Frederick R. Nourse, Junior, in June, 1942. Ross was then thirty-six years of age and Mrs. Nourse twenty-five. The Nourses with their three children lived in Dedham. In June, 1942, Nourse entered the military service and went to North Carolina. At about the same time the plaintiff with her children went to Kennebunkport, Maine, for the summer. Throughout that season Ross saw the defendant four or five times a week but spent the week ends at Kennebunkport. About Labor Day Ross and the defendant went to New Haven and stayed at a hotel, being registered as "Mr. and Mrs. Henry L. Ross." Thereafter Ross and the defendant made numerous trips

together, were registered where they stopped as Mr. and Mrs. Henry L. Ross, and occupied the same room. When Nourse came home on leave on February 11, 1943, the defendant asked him for a divorce to which he agreed after an interview with Ross. Later on the same night Ross asked the plaintiff for a divorce so that he could marry the defendant, but the plaintiff did not consent. Nourse was killed in an automobile accident on June 5, 1943. During that summer Ross went to Kennebunkport only once. He had no sexual relations with his wife between June, 1943, and November, 1945. The Rosses gave up the house where they lived in Wayland in the fall of 1943 and the plaintiff returned to New Haven, Ross remaining in Massachusetts. He entered the navy in December of that year and remained in active service until November 9, 1945. When he was ashore the defendant visited him at various places in the eastern part of the country. After going on inactive duty Ross joined his wife in New Haven and announced that he "was back to stay." He was affectionate and kind. Nevertheless he and the defendant went to Florida and Nassau in January, 1946, and remained away until the middle of February. He returned to New Haven but did not resume marital relations with his wife. In the summer of 1946 Ross rented a cottage in Kennebunkport and occasionally went there on week ends to visit his family. But after September he moved to Boston and never returned to live with the plaintiff. In June, 1947, there were negotiations between Ross and the plaintiff's attorneys regarding a divorce and the establishment of a trust fund, but no settlement was reached. In January, 1948, the defendant accompanied Ross to Florida where, on application by him, he obtained a decree of divorce on July 20, 1948. He married the defendant three days later. They now have a child born December 4, 1949.

During 1943 and 1944 when Ross and the defendant were together she contributed toward the expenses of their trips. Her contributions in 1943 amounted to $1,064. On their trip to Florida in 1946 she contributed $1,000 or more

to their joint expenses. In 1947 she gave Ross checks totaling $8,334 of which $2,500 was paid in June, 1947, when he consulted Boston counsel. In 1948, up to the time of their marriage, she contributed $2,292 toward their expenses. During the years 1946, 1947, and 1948 her checks drawn to Ross totaled $12,958, and in 1943, 1944, and 1945, $2,589.

The defendant excepted to the admission of a letter (exhibit 4) dated April 18 (presumably 1945) written by Ross to his wife when he was in the navy and serving in the Pacific area. It appeared to be an affectionate letter, containing a reference to the children, and, in connection with an expected attack on Japan, a suggestion of the possibility of something happening to him. It read in part: "I want you to know that I'm desperately sorry for all the unhappiness I've caused you — you haven't deserved it, one bit." This letter was written before the time when, as it could be found, he finally deserted his wife. It was clearly admissible as evidence of the state of his affection for his wife. The loss of his affection was an element of her damage. *Cutter* v. *Cooper*, 234 Mass. 307, 316–317. *Sherry* v. *Moore*, 258 Mass. 420, 423.

The defendant also excepted to the admission of a letter (exhibit 19) post marked April 21, 1945, from the defendant to Ross. She sent him her love, addressed him as "dearest," and asked him to keep writing. The defendant contends that the letter should have been excluded because it included the following paragraph: "It has been quite a hectic day — Pete Sawyer — my cousin from Houlton, came out this morning on his way back from Washington — and presented me with $25,000 more — due me from my grandfather's estate. Everything seems to come at once — and it's too bad that it didn't come a little earlier — not that we ever really had to deny ourselves much — but anyway sweet — the greater part of it will be reinvested against a happier day." It could be found that at the time of the letter the relations of Ross to the defendant had reached the stage where they contemplated living together.

The letter was admissible as evidence tending to show that the defendant held out to Ross the expectation of future financial security as a means to persuade him to abandon his wife for the defendant. The judge properly instructed the jury that the amount of the defendant's wealth was not in issue and that the letter could only be considered by them on the question of enticement. See *Webber* v. *Benbow*, 211 Mass. 366, 368; *Georgacopoulos* v. *Katralis*, 318 Mass. 34, 37; *Cramer* v. *Cramer*, 106 Wash. 681, 685.

Portions of another letter from the defendant to Ross post marked April 17, 1945, were read to the jury subject to the defendant's exception. Therein the defendant wrote of selling some jewelry for $2,800 and referred to a Gilbert Stuart painting worth $10,000 or $15,000. She stated that she was enclosing a check "out of . . . [her] good fortune" and as to the painting said, "So as money in the bank really makes more sense, we will probably sell it, and naturally everything will go in equal shares." These excerpts from the letter were admissible for the reasons stated in reference to the letter of April 21. The judge carefully restricted their use to the issue of enticement. In respect to the April 17 letter the defendant was asked by her counsel, "There is testimony that at a certain time you made a sale of some jewelry. Was this done on your own initiative?" She answered "No." The following question, "Were you advised to do so?" was excluded, and the defendant excepted. While the context seems to show that an affirmative answer was expected, in the absence of an offer of proof as to what further facts were intended to be shown, it does not appear that the defendant was harmed. See *Falk* v. *Falk*, 279 Mass. 530, 532; *Nicholas* v. *Lewis Furniture Co.* 292 Mass. 500, 504.

The defendant offered a letter (exhibit B for identification) dated March 28, 1947, from the plaintiff's attorney in New Haven to Ross in Boston which read as follows.

"Mrs. Ross has discussed with us your desertion of her and failure to provide her with any support. From the discussions with her, we understand that you are not in a

position to furnish her adequate support. We understand you have paid her nothing since September of 1946. We further understand that you are paying for the education of your minor son, Leigh S. Ross.

"Under these circumstances, we have advised Mrs. Ross that her only means of effectively securing adequate funds for her support would be to seek damages from Mrs. Frederick Nourse, in an action for alienation of affections, which would be commenced in the court having jurisdiction over Mrs. Nourse in Massachusetts.

"Mrs. Ross has directed us to notify you that unless you are able to make arrangements for the satisfactory support of Mrs. Ross and for the children until such time as they cease to be minors, and unless you advise us of these plans in the near future, we are to make arrangements to have suit brought against Mrs. Nourse in Massachusetts."

The second and third paragraphs were admitted, and the first paragraph was excluded subject to the defendant's exception.

It was not questioned that the letter was written under authority given by the plaintiff. See *W. A. Robinson, Inc.* v. *Burke*, 327 Mass. 670, 674–675. Although the present action was not commenced until October, 1948, the paragraphs admitted had a bearing on the motive of the plaintiff in resorting to legal proceedings against the defendant. The first paragraph also might properly have been admitted (see *Sullivan* v. *Morse*, 271 Mass. 501, 504) but we think its exclusion did not harm the defendant. The advice given by the attorneys to the plaintiff and her direction to them were contained in the succeeding paragraphs. Their import was not affected by the preliminary statement respecting the understanding of the attorneys as to the failure of Ross to furnish support. In the second paragraph it was clearly stated that their advice to bring an action against the defendant was for the purpose of securing adequate support. There was no error.

Another letter (exhibit A for identification) from the same attorney to Ross, dated June 4, 1947, was excluded

subject to the defendant's exception. It read, "As I said to you on the telephone yesterday, your suggestion for settlement is not satisfactory to Mrs. Ross. . . . She feels that unless you can continue to carry on the boy's tuition and make some provision for her safeguard in the future, she must do what she can to secure that by suit. This can be avoided if you will meet the following conditions." The conditions were listed. The letter was plainly a proposal to Ross for settlement of a controversy between him and his wife over the future support of his family. The only portion material to the present case was the suggestion of suit and the way in which it could be avoided. If this suit was the one of which mention had previously been made by the attorney, the letter was admissible as evidence of the plaintiff's motive. It added nothing to the earlier letter except a more definite statement of the conditions imposed. The evidence of motive which it provided was merely cumulative and in our opinion its effect on the result of the trial would have been unimportant. "The admission or exclusion of merely cumulative evidence, that adds nothing to evidence already in the case, does not require the sustaining of exceptions, even though there was technical error." *Bendett* v. *Bendett*, 315 Mass. 59, 65–66, and cases cited.

The only other exception argued was to the "singling out the reading of letters [by the judge in his charge] to show what was an undisputed situation in the case," namely, the knowledge of the defendant that the Rosses were married. An examination of the charge discloses no prejudicial emphasis on that point. The judge stated that the question of knowledge did not appear to be in dispute and brought to the attention of the jury the instances where the defendant had been in the company of the Rosses. He also read an excerpt from a letter from the defendant to Ross in which she referred to the plaintiff. There had been no agreement of counsel on the matter and it was for the judge to decide to what extent he should state the evidence and discuss the possible inferences of fact that might be drawn

from it. *Commonwealth* v. *Polian*, 288 Mass. 494, 499, and cases cited. *R. Dunkel, Inc.* v. *V. Barletta Co.* 302 Mass. 7, 12. We find in the charge no suggestion of bias or prejudice. There is no merit in the exception.

*Exceptions overruled.*